UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUG ORANGE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SCHENLEY GARDENS,<br><br>　　　　Defendant. | Case No. _____<br><br><br>JURY TRIAL DEMANDED |

# COMPLAINT

NOW COMES Plaintiff, Doug Orange, by and through his attorney, Christi Wallace, Esquire of Kraemer, Manes & Associates LLC, and files this Complaint alleging as follows:

## I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e. Plaintiff alleges the Defendant gave preferential treatment to female workers and was ultimately terminated because of his Gender and in retaliation for reporting the discriminatory behavior.

2. Plaintiff also alleges discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§621-623. Plaintiff alleges the Defendant gave preferential treatment to female workers and was ultimately terminated because of his age and in retaliation for reporting the discriminatory behavior.

## II. Jurisdiction and Venue

3. This action arises under Title VII, 42 U.S.C. §2000e, and ADEA, 29 U.S.C. §§621-23. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1367(a).

5. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. Parties

6. Plaintiff, Doug Orange ("Plaintiff"), is an adult individual residing at 16 Timber Trail Drive, Greensburg, PA 15601 of Westmoreland County, Commonwealth of Pennsylvania.

7. Defendant, Schenley Gardens ("Defendant"), is a business located at 3890 Bigelow Boulevard, Pittsburgh, PA 15213 of Allegheny County, Commonwealth of Pennsylvania.

## IV. Facts

8. Plaintiff became employed with Defendant in April 2014 as the Community Outreach Director.

    a. As Community Outreach Director, Plaintiff's position was to build referral relationships, but most of all, build the census of residents at Defendant's facility.

    b. Plaintiff was a stellar employee.

        i. In June of 2014, he sold 10 long-term move-ins and 2 respite stays.

  c. In June 2014, Susan Lubke ("Ms. Lubke"), the Regional Sales Manager from Blue Harbor Senior Living (who manages Defendant) visited the Defendant's facility and wrote Plaintiff a card thanking him for doing such a great job.

9. In late June 2014, Greg Ziemkiewicz ("Mr. Ziemkiewicz"), was hired as the Executive Director.

  a. After Mr. Ziemkiewicz was hired, everything changed.

  b. Plaintiff's co-worker, Ed Denselbeck ("Mr. Denselbeck"), had worked with Mr. Ziemkiewicz in the past and had a conflict. As a result, Mr. Denselbeck put in his two-week notice shortly after Mr. Ziemkiewicz started.

  c. As a result of Mr. Denselbeck's resignation, Plaintiff had to perform Mr. Denselbeck's job duties in addition to his own.

    i. Plaintiff worked long hours.

    ii. Sometimes he would stay until 7-8PM and even work weekends.

10. In August of 2014, Mr. Ziemkiewicz hired a 25-year old female, Jesse Uhlrig ("Ms. Uhlrig"), with no Personal Care sales experience to replace Mr. Denselbeck.

  a. Upon hire, Ms. Uhlrig received a higher salary with better benefits although she had less experience than Plaintiff.

    i. This was the first example of preferential treatment given to a younger, female worker.

  b. Ms. Uhlrig eventually took control of all Plaintiff's inquiries and leads.

    i. Placement agencies would call and ask for Plaintiff but Ms. Uhlrig wouldn't give it to Plaintiff.

    ii. Ms. Uhlrig would take the referral and get credit for it.

          iii. This was done at the direction of Mr. Ziemkiewicz.

11. In July of 2014, Ms. Lubke came back down to Defendant's facility for another 4-day visit.

    a. She observed Mr. Ziemkiewicz's behavior towards Plaintiff.

    b. Before Ms. Lubke left, Plaintiff talked to her about how Mr. Ziemkiewicz and Ms. Uhlrig were treating him. She interrupted him and said, "I see what's going on here Doug. Greg wants you to quit. Do not quit. You are good at your job. Just continue to do a great job."

12. Ms. Uhlrig eventually quit at the end of December 2014.

13. At one of the morning meetings in late December 2014, someone mentioned a gentleman that may be a candidate for Ms. Uhlrig's replacement.

    a. Mr. Ziemkiewicz said, "No. I want to hire a girl for that position."

14. The December 2014 incident wasn't the only time Mr. Ziemkiewicz made it clear he favored female workers.

    a. At a morning meeting in November 2014, there was a discussion of a male housekeeping worker who hurt his back and was permitted to come back to light duty.

        i. The worker said that sitting at a desk for 8 hours hurt his back and he couldn't to it.

        ii. Mr. Ziemkiewicz said, "That's ok. I'll have him paint the residents nails."

15. On January 16, 2015, Mr. Ziemkiewicz hired another girl, Cheryl Kelly ("Ms. Kelly"), as Ms. Uhlrig's replacement.

    a. Again, Mr. Ziemkiewicz gave Ms. Kelly all the Plaintiff's leads and control of all incoming calls.

16. Mr. Ziemkiewicz treated Plaintiff unfair since he was hired as the Executive Director in 2014.

    a. Mr. Ziemkiewicz would give younger, female workers preferential treatment.

        i. When Plaintiff started, he was told the policy was that he had to work 30 days before he was eligible for any commission.

            1. Ms. Uhlrig started on the third week of August 2014. Plaintiff sold 3 move-ins for the month of August. Ms. Uhlrig sold none however Mr. Ziemkiewicz told Plaintiff that he had to split his commission with Ms. Uhlrig

            2. The same thing happened again with Ms. Kelly. Plaintiff sold 3 move-ins for the month of January 2015 and Ms. Kelly didn't sell anything. Mr. Ziemkiewicz told Plaintiff that Ms. Kelly gets half of his commission.

        ii. Both Ms. Uhlrig and Ms. Kelly were eligible for commission without working 30 days but Plaintiff had to work the full 30 days.

    b. Plaintiff also never received a raise he was promised.

        i. Plaintiff had his 90-day evaluation with Mr. Ziemkiewicz in July 2014.

        ii. Mr. Ziemkiewicz told Plaintiff he would get a $1000/year increase.

        iii. Plaintiff never received his raise.

    c. In October of 2014, Mr. Ziemkiewicz never paid Plaintiff for 4.33 hours of PTO he had accrued.

      i. Plaintiff brought it to his attention and Mr. Ziemkiewicz said he would take care of it but never did.

  d. Mr. Ziemkiewicz would give Plaintiff meaningless tasks to do yet would never ask the younger, female workers to do such.

      i. On February 19, 2015, Mr. Ziemkiewicz pulled Plaintiff from doing his job at a local hospital to come back to the office. Mr. Ziemkiewicz had Plaintiff run out to get bath towels and paper towels.

      ii. On February 23, 2015, Mr. Ziemkiewicz asked Plaintiff to run out and get beer, liquor and martini glasses instead of being in the hospitals with referral sources.

  e. Mr. Ziemkiewicz would also harass Plaintiff at odd hours.

      i. He would text and call Plaintiff me as early as 7AM and as late as 10PM.

17. In February 2015, Plaintiff had enough and complained about Mr. Ziemkiewicz to the new Regional Sales Director, Angie Conklin ("Ms. Conklin).

  a. After Plaintiff reported Mr. Ziemkiewicz, things got worse.

  b. Mr. Ziemkiewicz would give Plaintiff extra paperwork to do, assign even more meaningless tasks and bullied the Plaintiff to the point where he could not sleep at night and went to the hospital twice for stomach pains.

  c. Ms. Conklin and Mr. Ziemkiewicz worked together at another personal care home in the past. Mr. Ziemkiewicz was instrumental in getting Ms. Conklin hired at Defendant.

  d. Plaintiff believes Ms. Conklin told Mr. Ziemkiewicz about the complaints he made which is why Mr. Ziemkiewicz retaliated against him.

18. On February 23, 2015, Mr. Ziemkiewicz gave Plaintiff his first and final warning.

    a. The warning stated Plaintiff wasn't performing his job responsibilities, which he clearly was.

    b. This was done in retaliation for reporting Mr. Ziemkiewicz's behavior to Ms. Conklin.

19. On April 16, 2015, Plaintiff was discharged due to poor work performance.

## V. Allegations

### Count I
### Discrimination and Retaliation in Violation of the ADEA

20. The preceding paragraphs are incorporated herein as if set forth at length.

21. The Plaintiff is a member of a protected class under the ADEA.

22. Plaintiff was born on January 15, 1959 and was 56 when he was fired.

23. Defendant engaged in the following unlawful discrimination in violation of the ADEA:

    a. Mr. Ziemkiewicz hired all younger workers.

        i. In August of 2014, Mr. Ziemkiewicz hired 25-year old Ms. Uhlrig with no experience on the Personal Care field.

        ii. On January 16, 2015, Mr. Ziemkiewicz hired another younger woman, Ms. Kelly, as Ms. Uhlrig's replacement.

    b. Mr. Ziemkiewicz would give younger workers preferential treatment.

        i. Ms. Uhlrig received a higher salary with better benefits although she had less experience than Plaintiff.

    ii. When Ms. Uhlrig was hired, she eventually took control of all the Plaintiff's inquiries and leads. The same thing happened when Ms. Kelly was hired.

    iii. When Plaintiff started, he was told the policy was that he had to work 30 days before he was eligible for any commission.

        1. Ms. Uhlrig started on the third week of August 2014. Plaintiff sold 3 move-ins for the month of August. Ms. Uhlrig sold none however Mr. Ziemkiewicz told Plaintiff that he had to split his commission with Ms. Uhlrig

        2. The same thing happened again with Ms. Kelly. Plaintiff sold 3 move-ins for the month of January 2015 and Ms. Kelly didn't sell anything. Mr. Ziemkiewicz told Plaintiff that Ms. Kelly gets half of his commission.

        3. Both Ms. Uhlrig and Ms. Kelly were eligible for commission without working for 30 days like Plaintiff had to.

c. Mr. Ziemkiewicz ignored Plaintiff and his concerns.

    i. In October of 2014, Mr. Ziemkiewicz never paid Plaintiff for 4.33 hours of PTO he had accrued. Plaintiff brought it to his attention and he said he would take care of it but never did.

d. Mr. Ziemkiewicz would give Plaintiff meaningless tasks to do.

    i. On February 19, 2015, Mr. Ziemkiewicz pulled Plaintiff from doing his job at a local hospital to come back to the office. Mr. Ziemkiewicz had Plaintiff run out to get bath towels and paper towels.

      ii. On February 23, 2015, Mr. Ziemkiewicz asked Plaintiff to run out and get beer, liquor and martini glasses instead of being in the hospitals with referral sources.

   e. Mr. Ziemkiewicz would also harass Plaintiff at odd hours.

      i. He would text and call Plaintiff me as early as 7AM and as late as 10PM.

24. Defendant also retaliated against Plaintiff for reporting Mr. Ziemkiewicz's discriminatory behavior.

   a. In February 2015, Plaintiff complained about Mr. Ziemkiewicz to Ms. Conklin. After Plaintiff reported Mr. Ziemkiewicz, things got worse.

      i. Mr. Ziemkiewicz would give Plaintiff extra paperwork to do, even more meaningless tasks and bullied the Plaintiff to the point where he could not sleep at night and went to the hospital twice for stomach pains.

   b. On February 23, 2015, Mr. Ziemkiewicz gave Plaintiff his first and final warning.

      i. Plaintiff was terminated on February 23, 2015.

      ii. This was retaliation for reporting Mr. Ziemkiewicz's behavior to Ms. Conklin.

## Count I
### Discrimination and Retaliation in Violation of Title VII

25. The preceding paragraphs are incorporated herein as if set forth at length.

26. The Plaintiff is a member of a protected class under Title VII.

27. Plaintiff is Caucasian Male.

28. Plaintiff was subjected to discriminatory treatment in violation of Title VII.

29. The Defendant discriminated against the Plaintiff in violation of Title VII in the following ways:

a. Mr. Ziemkiewicz hired all female workers.

   i. In August of 2014, Mr. Ziemkiewicz hired Ms. Uhlrig with no experience on the Personal Care field.

   ii. On January 16, 2015, Mr. Ziemkiewicz hired another woman, Ms. Kelly, as Ms. Uhlrig's replacement.

b. Mr. Ziemkiewicz would give younger workers preferential treatment.

   i. Ms. Uhlrig received a higher salary with better benefits although she had less experience than Plaintiff.

   ii. When Ms. Uhlrig was hired, she eventually took control of all Plaintiff's inquiries and leads. The same thing happened when Ms. Kelly was hired.

   iii. When Plaintiff started, he was told the policy was that he had to work 30 days before he was eligible for any commission.

      1. Ms. Uhlrig started on the third week of August 2014. Plaintiff sold 3 move-ins for the month of August. Ms. Uhlrig sold none however Mr. Ziemkiewicz told Plaintiff that he had to split his commission with Ms. Uhlrig

      2. The same thing happened again with Ms. Kelly. Plaintiff sold 3 move-ins for the month of January 2015 and Ms. Kelly didn't sell anything. Plaintiff was doing his commission report and checked with Mr. Ziemkiewicz and he said Ms. Kelly gets half of his commission.

      3. Both Ms. Uhlrig and Ms. Kelly were eligible for commission without working for 30 days like Plaintiff had to.

    b. Mr. Ziemkiewicz ignored Plaintiff and his concerns.

        i. In October of 2014, Mr. Ziemkiewicz never paid Plaintiff for 4.33 hours of PTO he had accrued. Plaintiff brought it to his attention and he said he would take care of it but never did.

    c. Mr. Ziemkiewicz would give Plaintiff meaningless tasks to do.

        i. On February 19, 2015, Mr. Ziemkiewicz pulled Plaintiff from doing his job at a local hospital to come back to the office. Plaintiff came back and Mr. Ziemkiewicz had Plaintiff run out to get bath towels and paper towels.

        ii. On February 23, 2015, Mr. Ziemkiewicz asked Plaintiff to run out and get beer, liquor and martini glasses instead of being in the hospitals with referral sources.

    d. Mr. Ziemkiewicz would also harass Plaintiff at odd hours.

        i. He would text and call Plaintiff me as early as 7AM and as late as 10PM.

  c. Mr. Ziemkiewicz would make discriminatory comments.

        i. At one of our morning meetings in December 2014, someone mentioned about a gentleman that may be a candidate for Ms. Uhlrig's replacement.

            1. Mr. Ziemkiewicz specifically said, "No. I want to hire a girl for that position."

        ii. At a morning meeting in November 2014, there was a discussion of a male housekeeping worker who hurt his back and was permitted to come back to light duty.

            1. The worker said that sitting at a desk for 8 hrs hurt his back and he couldn't to it.

      2. Mr. Ziemkiewicz said, "That's ok. I'll have him paint the residents nails."

30. Defendant also retaliated against Plaintiff for reporting Mr. Ziemkiewicz's discriminatory behavior.

    a. In February 2015, Plaintiff complained about Mr. Ziemkiewicz to the new Ms. Conklin. After Plaintiff reported Mr. Ziemkiewicz, things got worse.

      iii. Mr. Ziemkiewicz would give Plaintiff extra paperwork to do, even more meaningless tasks and bullied the Plaintiff to the point that he could not sleep at night and went to the hospital twice for stomach pains.

    c. On February 23, 2015, Mr. Ziemkiewicz gave Plaintiff his first and final warning.

      i. Plaintiff was terminated on February 23, 2015.

      ii. This was retaliation for reporting Mr. Ziemkiewicz's behavior to Ms. Conklin.

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendant for the following:

    a. Loss of income of back wages in excess of $21,000;

    b. Loss of wages due to reduced salary (from 8/1/15-11/24/15) in excess of $10,000;

    c. Loss of future wages in excess of $100,000;

    d. Additional punitive damages in excess of $75,000;

    e. Plaintiffs' legal fees in excess of $25,000;

    f. Pre-judgment and continuing interest;

    g. Court costs; and

    h. Other such relief as the Court may deem just and proper.

        Respectfully submitted,

        */s/ Christi Wallace*

        Christi Wallace, Esq.
        Kraemer, Manes and Associates, LLC
        U.S. Steel Tower
        600 Grant Street, Suite 660
        Pittsburgh, PA 15219